

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| FERRILL JOSEPH VOLPICELLI,<br><br>    Petitioner,<br><br>vs.<br><br>JACK PALMER, et al.,<br><br>    Respondents. | Case No. 3:08-CV-00237-RCJ-(VPC)<br><br>**ORDER** |

Before the Court are the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#5), Respondents' Answer (#18), and Petitioner's Reply (#24). The Court finds that Petitioner is not entitled to relief and denies the Petition (#5).

The Court has reviewed the transcript of Petitioner's trial. See Ex. 54 (#20-18). The Nevada Supreme Court accurately summarized the evidence presented:

> At trial, the State presented evidence, including police officer testimony and audiotapes of telephone conversations, that Volpicelli, while in custody at the Washoe County Jail, spoke with his teenage son, Travis Volpicelli, by telephone and coaxed im into retrieving a check that Volpicelli knew had been confiscated from Travis by law enforcement officers for evidentiary purposes. During the telephone call, Volpicelli specifically instructed Travis to go back to the Washoe County Jail, which had previously issued a check to Travis, and request that a new check be issued. When Travis questioned the propriety of his father's request, Volpicelli told Travis: "You're not lying; just tell them you don't have it anymore. Somebody took it. You just came home and it was gone." Travis agreed and, thereafter, went to the Washoe County Jail and lied to the clerk, telling her that the check had been misplaced and that he needed a new one. The Clerk, who was aware that the prior check had been voided, contacted detectives and then issued Travis a new check. Travis was arrested as he attempted to exit the jail. Volpicelli was subsequently charged with aiding and abetting Travis in attempting to obtain money by false pretenses.

Ex. 54, pp. 2-3 (#21-7, pp. 3-4).[1]

---

[1] Page numbers in parentheses refer to the electronic documents in the Court's computer docket.

Petitioner was charged with aiding and abetting the commission of burglary and aiding and abetting the commission of an attempt to obtain money by false pretenses. Ex. 9 (#19-10). After a bench trial, Petitioner was convicted of aiding and abetting in the commission of an attempt to obtain money by false pretenses. Ex. 61 (#20-25). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 79 (#21-7). Petitioner then filed a post-conviction petition for a writ of habeas corpus in the state district court. Ex. 83 (#21-11). The district court denied the petition. Ex. 104 (#21-32). Petitioner appealed. The Nevada Supreme Court reversed in part on one ground: Petitioner's appellate counsel was ineffective for failing to argue that the district court had directed that the sentence in this case run consecutively to the sentence in another case in which judgment had not yet been entered. The Nevada Supreme Court remanded for entry of an amended judgment of conviction that struck that consecutive-sentence provision. Ex. 125, p. 13 (#22-17, p. 14). The Nevada Supreme Court affirmed on all other grounds.

Petitioner then commenced this action. The Court dismissed all grounds but Ground One. Order (#4). Respondents have answered the remaining ground.

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

Ground One contains several claims of ineffective assistance of counsel. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

1    Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If a state court applies the principles of Strickland to a claim of ineffective assistance of counsel in a proceeding before that court, the petitioner must show that the state court applied Strickland in an objectively unreasonable manner to gain federal habeas corpus relief. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

First, Petitioner that at sentencing counsel failed to put forth Petitioner in the best light available and did nothing more than agree with the State in requesting an appropriate sentence. The record, and Petitioner's own allegations, do not bear out this claim. Counsel asked for a sentence with a minimum term of twelve months and a maximum term of thirty months. For the amount of money involved in this case, obtaining money by false pretenses is a category B felony. Nev. Rev. Stat. § 205.380(1)(a). An attempt to commit a category B felony is itself a category C felony. Nev. Rev. Stat. § 193.330(1)(a)(3). Unless otherwise provided, a category C felony is punished by a minimum term in prison no less than twelve months and a maximum term in prison no more than sixty months. Nev. Rev. Stat. § 193.130(2)(c). Furthermore, the minimum term must be no more than forty percent of the maximum term. Nev. Rev. Stat. § 193.130(1). The prosecution asked for the greatest possible

sentence, with a minimum term of twenty-four months and a maximum term of sixty months. Ex. 62, p. 6 (#20-26, p. 7). Counsel asked for the lightest possible sentence, because the minimum term could not have been less than twelve months and the maximum term could not have been less than thirty months by operation of the forty percent rule. Counsel did what Petitioner claims he should have done.

Second, Petitioner takes exception to counsel's statement that Petitioner had an extensive criminal history. Petitioner takes the statement out of context. Counsel stated:

> The Court has heard this case, so I won't belabor the matter, but I would ask the Court to also consider perhaps a 12 to 30 month sentence in this instance; and the reason why I suggest that—and run it—and ask that the Court consider running it concurrent is the fact that Mr. Volpicelli, as we know, has an extensive criminal history but at the same time also has some severe, I think, psychological problems.
>
> In addition, he's also facing federal revocation. So he's going to be in for a long period of time. This at least gives him some light at the end of the tunnel. I think that it also will allow him to do some things which I think he really must do in the prison system to help himself, and that is avail himself of all the psychological help that he can get while there.

Ex. 62, p. 4 (#20-26, p. 5). Counsel was not highlighting Petitioner's criminal history, he was trying to minimize Petitioner's criminal history. The argument seemed to have been effective, because the judge stated, "The Court believes the sentence should measure the crime and the offense that took place, not pile on years just because of your criminal history." Id., p. 7 (#20-26, p. 8). The judge then sentenced Petitioner to a minimum term of twelve months and a maximum term of forty-eight months. Id. That was less than the prosecution's request and closer to Petitioner's request, at least in the minimum term.

Third, Petitioner argues that counsel failed to investigate Petitioner's mental state. Petitioner's mental state already was before the trial court. Petitioner went through two rounds of psychiatric examinations. See Ex. 14 (#19-15); Ex. 45 (#20-9). The report, as related by the prosecutor, stated, "The client's symptoms reflect an emotional response to his untenable situation, facing severe long-term consequences arising from criminal conduct, if convicted, and personality characteristics represented by an obsession of unjust, but unsolvable entanglement with the criminal justice system." Ex. 45, p. 5 (#20-9, p. 6). Even if counsel did not put forth evidence of Petitioner's psychological problems at sentencing, the trial court already knew of those problems.

      Fourth, Petitioner argues that counsel failed to interview friends and family, and that counsel failed to call them as witnesses at the sentencing hearing. The Court agrees with Respondents that Petitioner does not allege that he ever informed counsel of his wishes that these witnesses be called and does not allege what testimony these witnesses would have presented.

      On these issues, the Nevada Supreme Court held:

> Fourth, appellant claimed that his trial counsel was ineffective for failing to present mitigating evidence at sentencing. Specifically, appellant claimed that his trial counsel failed to present evidence concerning appellant's history of psychological problems and use of psychotropic medication, present witnesses to testify to his "social, ethical and moral background," and argue for a lesser sentence than that sought by the State. Appellant failed to demonstrate that his trial counsel was deficient or that he was prejudiced. Appellant's trial counsel argued that appellant had suffered from psychological problems. Further, appellant failed to identify the specific conditions from which he suffered and the medications he had taken. Moreover, appellant did not demonstrate that had counsel presented the purported mitigating evidence his sentence would have been different. Lastly, appellant's counsel argued for a sentence of 12 to 30 months in prison, a lesser sentence than the sentence of 24 to 60 months in prison that was sought by the State. Appellant's counsel did not concur with the State's sentence recommendation. Therefore, the district court did not err in denying this claim.

Ex. 125, pp. 6-7 (#22-17, pp. 7-8) (citation omitted). In light of the facts in the record, described above, this was a reasonable application of Strickland.

      Fifth, Petitioner argues that trial counsel failed to object to statements by the prosecutor at sentencing that Petitioner is a dangerous man. See Ex. 62, p. 6 (#20-26, p. 7). On this issue, the Nevada Supreme Court held:

> Fifth, appellant claimed that his trial counsel was ineffective for failing to object to unfounded statements made by the prosecution during the sentencing hearing. Specifically, appellant asserted that the State improperly claimed that he was "dangerous." Appellant failed to demonstrate that he was prejudiced. This court has consistently afforded the district court wide discretion in its sentencing decision. "[T]his court will reverse a sentence if it supported solely by impalpable and highly suspect evidence." The State argued that appellant was dangerous because he was able to persuade other people, in the instant case as well as other cases, to commit crimes on his behalf. The State did not claim that appellant had committed crimes of violence. However, even assuming that the State's counsel's statement was highly suspect, we conclude that the district court's sentence was not based solely upon the statement. The district court indicated that it sentenced appellant based on his conduct in the present case alone and not based on his prior criminal history. Therefore, the district court did not err in denying the claim.

Ex. 125, pp. 7-8 (#22-17, pp. 8-9) (citations omitted). The prosecution's argument was correct because Petitioner did persuade his son to commit a crime. This was a reasonable application of Strickland.

-6-

Also before the Court is Petitioner's Renewed Motion to Reconsider (#23) the dismissal of Grounds Three and Six, Respondents' Opposition (#25), and Petitioner's Reply (#26). Petitioner has persuaded the Court that its initial conclusion was correct. Petitioner provided a transcript of the telephone conversation between himself and his son, in which he persuaded his son to return to the jail to get another check. It states, in relevant part:

> FERRILL: What I was wondering is why don't you just go, uh, call Washoe County and just say you know that check you gave me, I lost it, give me another one.
>
> TRAVIS: Yeah, that's true.
>
> FERRILL: What do you think? You wanna try it? Can't hear ya.
>
> TRAVIS: I don't know.
>
> FERRILL: You don't want to do it?
>
> TRAVIS: I don't know.
>
> FERRILL: Is there someone there?
>
> TRAVIS: No.
>
> FERRILL: Why? You think there's something wrong with that?
>
> TRAVIS: Well, I . . .
>
> FERRILL: Why don't you just say I came home and somebody took it. I don't have it anymore.
>
> TRAVIS: Yeah.
>
> FERRILL: And that's not lying. Somebody took it I guess.
>
> TRAVIS: Yeah, that's true.
>
> FERRILL: Right?
>
> TRAVIS: Yeah.
>
> FERRILL: So why don't you work on that tomorrow so you can get some money.
>
> TRAVIS: Alright.

Renewed Motion, Ex. A, pp. 1-2 (#23, pp. 8-9). The evidence presented at the trial showed that Petitioner had no right to the wallet or the money. The items were seized pursuant to his arrest on charges not at issue in this action, and only an error kept them out of evidence and put them into property that could be released. See Ex. 54, p. 26 (#20-18, p. 9). Petitioner told his son to give

statements to the jail officials that would be lies. Travis did not "lose" the check, nor did "somebody" take the check; police officers recovered items that should have been placed into evidence. Petitioner further lied by stating that those statements would not be lies. With respect to Ground Three, Petitioner himself has proven that he committed the crime.

The Court's reasoning with respect to Ground Six also stands. Even if the recovery of the check and the wallet were illegal, the officers' error did not give Petitioner leave to commit a crime himself.

IT IS THEREFORE ORDERED that Petitioner's Renewed Motion to Reconsider (#23) is **DENIED**.

IT IS FURTHER ORDERED that the Petition for a Writ of Habeas Corpus (#5) is **DENIED**. The Clerk of the Court shall enter judgment accordingly.

Dated: This 5th day of October, 2009.

ROBERT C. JONES
United States District Judge